**James B. POTRATZ, Petitioner**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL PROTECTION and Erie City Water Authority, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Jan. 30, 2006.

Decided April 19, 2006.

Daniel E. Durst, Meadville, for petitioner.

Thaddeus A. Weber, Asst. Counsel, Meadville, for respondent, Department of Environmental Protection.

Timothy M. Zieziula, Erie, for respondent, Erie City Water Authority.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

James B. Potratz (Potratz) petitions for review of the order of the Environmental Hearing Board (Board) which granted the Pennsylvania Department of Environmental Protection (DEP) and Erie City Water Authority's (Authority)(Collectively, Respondents) motion for partial summary judgment on several issues raised in Potratz's amended notice of appeal.[1]

In April of 2002, the Authority filed two permit applications with the DEP for the construction of fluoridation facilities at the Sommerheim and Chestnut Street water treatment plants.[2] On August 21, 2002, the DEP issued a construction permit for the construction/modification of the public water supply for the Chestnut Street facility. On January 9, 2003, the Authority authored a certificate of completion of construction/modification of the public water supply for the Chestnut Street facility. On February 21, 2003, the DEP issued the operations permit for the Chestnut Street facility.[3]. On April 4, 2003, Potratz and the City of Erie filed a notice of appeal challenging DEP's grant of Authority's operations permit. This appeal was amended on April 23, 2003.[4]

On March 15, 2004, Potratz again filed a motion to amend his notice of appeal in

1. The Board granted partial summary judgment on the following objections in Potratz's amended notice of appeal: 19, 20 a-h, 21 b-c, 28 a-f, 29 a-g, 30 a-j and 31. We note that Potratz does not contest the dismissal of objections 20 a-h and 21 b-c.

2. The present controversy only deals with the facilities at the Chestnut Street water treatment plant.

3. Some members of City Council disagreed with the concept of fluoridating the public water supply and requested an opinion from the City Solicitor as to whether City Council could pass a resolution ordering the Authority to refrain from doing so.

4. The second notice of appeal was filed on behalf of Potratz, a private party, along with the City of Erie. The City Solicitor subsequently withdrew the appeal.

order to raise four constitutional claims in addition to those claims already before the Board. On May 12, 2004, Potratz was granted leave to amend his appeal.

On May 21, 2004, Potratz amended his notice of appeal and alleged that:

19) DEP abused its discretion or committed an error of law when it issued the Water Supply Permit because it failed to ascertain the components of hydrofluorosilicic acid and their effect upon public drinking water. Arsenic and lead are naturally occurring contaminants of hydrofluorosilicic acid and the levels of such cannot be adjusted. There exists a varying amount of naturally occurring arsenic and lead found in water supplies. The addition of hydrofluorosilicic acid to public water supplies adds to the natural levels of arsenic and lead thereby increasing the total level to an amount of those impurities that will certainly exceed the established scientific endpoints, known as Maximum Contaminant Level Goals, at which the risk of adverse health effects to consumers are expected to increase, and to a total concentration that under certain circumstances could very well exceed the regulatory Maximum Contaminant Level for those contaminants. . . .

28) [Authority]'s selection of hydrofluorosilicic acid as the medium to fluoridate the public water system violated [Authority]'s duty as a trustee under Article I, Section 27 of the Pennsylvania Constitution to protect the waters of the Commonwealth. . . .

29) [Respondent]'s administration of the Safe Drinking Water Act and approval of [Authority]'s permit to fluoridate the public drinking water violated [Respon-

dent]'s duty under Article I, Section 27 of the Pennsylvania Constitution to protect the waters of the Commonwealth. . . .

30) [Respondent]'s approval of [Authority]'s application to fluoridate violated [Potratz]'s rights under the United States Constitution. . . .

31) [Respondent]'s approval of [Authority]'s application to fluoridate violated [Potratz]'s rights under the Pennsylvania Constitution. . . .

Amended Notice of Appeal, Paragraph Nos. 19, 28–31; at 5, 11–15. Potratz's main complaint was the Authority's use of hydrofluorosilicic acid, which is an industrial waste product contaminated with impurities such as lead and arsenic, to fluoridate the public water supply. Amended Notice of Appeal, No. 19 at 5.[5]

On September 10, 2004, Respondents filed a joint motion for partial summary judgment. Respondents alleged that Potratz did not appeal the DEP's issuance of the construction permit but only the operation permit and that of Potratz's fifty-four objections, only two actually pertain to or challenge the validity of the operation permit, those being paragraphs 21a and 26 of Potratz's appeal.[6] Respondents allege that the general concept of fluoridating the public water supply was approved at the construction permit stage of the process and that Potratz failed to raise those objections in a timely manner after the DEP issued the construction permit and therefore, Potratz is precluded from raising those objections now by the Doctrine of Administrative Finality (Doctrine). Respondents therefore asked for a judgment as a matter of law relative to Potratz's

---

5. We note that Potratz does not contest the Board's grant of partial summary judgment on his objections in paragraphs 20a-h and 21 b-c.

6. Paragraphs 21a and 26 are not on appeal here.

paragraphs 19, 20a–20h, 21b–21c, 22–25, 27, 28a–28f, 29a–29g, 30a–30j, and 31a–31i of Potratz's appeal.

In response, Potratz contended that Respondents failed to properly plead and prove that he could have raised these issues earlier and that his constitutional claims were not ripe for consideration when the construction permit was issued.

On March 11, 2005, the Board issued an opinion and order granting the Respondents motion for partial summary judgment on objections 19, 20a-h, 21b-c, 28a-f, 29a-g, 30a-j, and 31 in Potratz's amended notice of appeal. The Board concluded that Potratz's constitutional issues were ripe when the construction permit was issued. The Board also found that Potratz would have had standing to raise his issues in an earlier appeal of the construction permit. Potratz petitioned our Court for review.[7]

Before our Court Potratz contends that Respondents failed to properly plead and meet their burden of proof regarding the application of the Doctrine to objections raised before the Board; and that the Board erred in finding that the Constitutional claims related to the use of the water additive by a public water supplier were sufficiently ripe for adjudication when a construction permit was issued by the DEP for the construction of a facility intended to add the water additive to the public water supply.

First, Potratz contends that Respondents failed to establish a prima facie case for the application of the Doctrine; that the Doctrine requires that the party against whom the Doctrine is applied to have also been aggrieved by the earlier agency action. The Doctrine precludes a collateral attack of an administrative action where the party aggrieved by the action foregoes his statutory appeal remedy. *Department of Environmental Protection v. Peters Township Sanitary Authority*, 767 A.2d 601 (Pa.Cmwlth.2001). Potratz contends that he was not an aggrieved party.

In *Commonwealth, Department of Environmental Resources v. Wheeling–Pittsburgh Steel Corp.*, 22 Pa.Cmwlth. 280, 348 A.2d 765 (1975), a steel manufacturer applied for a variance from minimum standards relating to particulate matter emissions into the atmosphere as established by the DEP's regulations. Through the variance, the steel manufacturer sought an extension of time in which it would be required to comply with the standards as applied to the steel manufacturer. The DEP granted the steel manufacturer's request for a variance from the required time standards. The steel manufacturer did not appeal this order. Two years later, the DEP initiated enforcement proceedings against the steel manufacturer for its failure to comply with the compliance deadline. The steel manufacturer filed an answer to the enforcement proceedings and attacked the validity of the

---

7. Our review of a Board's decision is limited to a determination of whether constitutional rights have been violated, errors of law committed, or whether essential findings of fact are supported by substantial evidence. *Bethenergy Mines, Inc. v. Department of Environmental Protection*, 676 A.2d 711 (Pa.Cmwlth.), *appeal denied*, 546 Pa. 668, 685 A.2d 547 (1996). A grant of summary judgment by the Board is proper where the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* Our Court may reverse the Board's entry of summary judgment where there has been an error of law or a clear or manifest abuse of discretion. *Fiore v. Department of Environmental Resources*, 96 Pa.Cmwlth. 477, 508 A.2d 371 (1986).

subject DEP regulations and subsequent DEP order. Our Court discussed whether the steel manufacturer should be precluded from raising these issues and held that the manufacturer "had no right to attack the DEP order in question nor the validity of the regulations upon which it was predicated." *Id.* Our Court further found in pertinent part as follows:

> We agree that an aggrieved party has no duty to appeal but disagree that upon failure to do so, the party so aggrieved preserves to some indefinite future proceedings the right to contest an unappealed order. To conclude otherwise, would postpone indefinitely the vitality of administrative orders and frustrate the orderly operation of administrative law. This principal was expressed in *Philadelphia v. Sam Bobman Department Store Company,* 189 Pa.Super. 72, 78 149 A.2d 518, 521 (1959), in which Judge Woodside stated:
>
> > It is settled both under common law and statute that where an act creates a right or liability or imposes a duty and prescribes a particular remedy for its enforcement such remedy is exclusive and must be strictly pursued. This means that one who fails to exhaust his statutory remedies may not thereafter raise an issue which could have and should have been raised in the proceeding afforded by his statutory remedy.
> > .... This is particularly true of special statutory appeals from the action of administrative bodies.

*Wheeling–Pittsburgh,* 348 A.2d at 767.

■ In the present controversy, Potratz challenges the DEP's issuance of the operation permit on February 21, 2003. Potratz did not challenge the August 21, 2002, issuance of the construction permit. Therefore, the scope of the project that was approved by the construction permit became final and unappealable once the time period for appealing that decision had expired. *Id.* The Board held that Potratz "could have and should have" raised his objections that are the subject of this petition, in an objection to the construction permit, that Potratz's failure to raise the issues by contesting the construction permit, resulted in his waiver of such issues and that it was improper to contest them in the operation permit. The Board has held before that the Doctrine applies in cases where an appeal was taken from an operation permit which was approved after a construction permit, when the appeal involves the same issues that could have been raised in the underlying construction permit. See, *Emporium Water Co. v. Com., Dept of Environmental Protection,* 1997 EHB 395 (1997).

The DEP has a two tiered permitting system. Section 109.503 of the regulations relating to the Safe Drinking Water Act (Act),[8] requires an applicant seeking a construction permit to submit among other things the following:

> (a) Permit application requirements. An application for a public water system construction permit shall be submitted in writing on forms provided by the Department and shall be accompanied by plans, specifications, engineer's report, water quality analyses and other data, information or documentation reasonably necessary to enable the Department to determine compliance with the act and this chapter.... Water quality analyses shall be conducted by a laboratory certified under this chapter.
>
> · · ·
>
> (a)(3)(ii)(C) Assurances that the commitments needed for proper operation and management of the system will be car-

8. Act of May 1, 1984, P.L. 206, *as amended,* 35 P.S. § 721.1–721.17.

ried out. These assurances can be given in the form of documentation of the credentials of management and operations personnel, cooperative agreements or service contracts.

25 Pa.Code § 109.503(a) and (a)(3)(ii)(C). Section 109.504 deals with applications for an operations permit. This section states in pertinent part as follows:

(a) To obtain a[n] operation permit for a new system ... the public water supplier shall submit a certification of construction to the Department upon completion of the applicable construction.... The certification shall state that the work was completed in accordance with the approved plans and specifications and shall be signed by the professional engineer or other person responsible for the work.

(b) The Department will not issue an operation permit ... unless the following conditions are satisfied:

(1) Construction of the new ... facilities has been approved by the Department.

(2) The water supplier has demonstrated to the Department that adequate operation and maintenance information for the new ... facilities is available onsite for use by the public water system's personnel.

(3) The water supplier has demonstrated to the Department that personnel required under § 109.704 (relating to operator certification) have been retained.

25 Pa.Code § 109.504(a) and (b)(1)-(3). A review of the regulations reveals that the Authority must first apply for a construction permit which requires, among other things, plans, specifications, and water quality analyses. The DEP uses this information to ensure that the applicant is complying with the Act and the regulations. In the present controversy, the Authority submitted an application that contained a stated purpose of the facility as "Fluoridation Facility". The application also contained under Module 12, hydrofluorosilicic [9] acid as the type of fluoridation compound to be used at the facility. The DEP issued the Authority's construction permit on August 21, 2002. Proper notice was published in the Pennsylvania Bulletin that informed all aggrieved parties that they had 30 days in which to file an appeal challenging this approval. Potratz did not appeal the issuance of the construction permit.

The Authority constructed its new fluoridation water treatment system and thereafter submitted an application for an operation permit which was issued on February 21, 2003. The regulations regarding the operation permit required the Authority to submit a certification that the construction was completed in accordance with the approved plans and specifications. 25 Pa.Code § 109.504(a). The operations permit was the only permit that Potratz appealed. Thus, the only issue that could be appealed to the Board would be whether the Authority completed its construction in accordance with the approved plans and specifications and/or whether the Authority failed to comply with the procedural requirements for certification, such as, a failure to fulfill the conditions required for an operation permit, such as, properly certified test operating personnel, etc. 25 Pa.Code § 109.504(b).

---

9. The DEP construction permit application refers to "hydrofluosilicic" acid. See, Authority's Permit Application, Module 12–Fluoridation, Reproduced Record (R.R.) at 89. However, the Board, in its opinion and Po-tratz, in his brief, refer to "hydrofluorosilicic" acid. The Authority uses the terms interchangeably throughout their brief. We will use the term "hydrofluorosilicic" acid for uniformity with the Board opinion.

The regulations ensure that any individual who is aggrieved by the proposed changes to a water treatment system or the construction of a new water treatment system have the opportunity to challenge the issuance of a construction permit before construction begins. In *Butch v. East Lackawannock Township Zoning Appeal Board,* 75 Pa.Cmwlth. 33, 460 A.2d 923 (1983), we held that persons who begin construction during the pendency of an appeal period, do so at their own peril. Once the appeal period has run, the Doctrine protects that person who has relied on the construction permit from being challenged at some time in the future.

In the present controversy, the cost of the construction of the facility was estimated at $285,498.78. To allow Potratz to appeal this permit after the construction of the facility under the guise of an operations permit would be substantially unfair to the Authority. It would cause every holder in possession of a construction permit to proceed with the construction "at its own peril."

Next, Potratz contends that the Board erred in finding that the Constitutional claims relating to the use of the water additive by a public water supplier, were sufficiently ripe for adjudication when a construction permit was issued by the DEP for the construction of a facility intending to add the water additive to the public water supply. Potratz argues that he would suffer no harm until the fluoride is actually added to the public water supply and distributed and therefore, the matter was not ripe for adjudication.

■■■ A party has standing if it is aggrieved by an action or order. *Commonwealth v. J.H.,* 563 Pa. 248, 759 A.2d 1269 (2000). A party is aggrieved if it has "a substantial, direct, immediate, and not remote interest in the subject-matter of the litigation." *Id.* at 252, 759 A.2d at 1271.

Potratz states in his Amended Notice of Appeal that he is a:

> natural person ... who works in the City of Erie and who owns real estate situated in the City of Erie.... During all times relevant to this Appeal, Appellant James B. Potratz is the owner of the Potratz Property, which is situated within the municipal boundaries of the City of Erie and within the service district of the [Authority].... The Potratz Property is supplied with water from the [Authority]. Appellant James B. Potratz fears the adverse effects of fluoridation upon his property. The mass fluoridation of the [Authority]'s water by and through the addition of an untested contaminated industrial waste product will result in a reasonable certainty of harm to Appellant James B. Potratz and his property.... Appellant James B. Potratz works in the City of Erie. Appellant James B. Potratz will be subjected to fluoridated water while he is working, as his business receives its drinking water from the [Authority]. The mass fluoridation of the [Authority]'s water by and through the addition of an untested contaminated industrial waste product will result in a reasonable certainty of harm to Appellant James B. Potratz.

Amended Notice of Appeal, May 19, 2004, Paragraph Nos. 1, 15–17; at 1,4. These pleadings by Potratz are sufficient to prove that Potratz was an aggrieved party at the time the construction permit was issued. He had a "substantial" interest as a land owner in the Authority's service area. He had a "direct" interest as the approval of the construction permit was the approval of the type of system that would be constructed. Potratz also had an "immediate" interest in that once the system was approved at the construction phase, the consumers would receive the fluoridated water, unless the Authority

failed to build the facility in conformance with the permit.

▇▇▇ Potratz's constitutional claims were ripe at the time the DEP granted the construction permit to the Authority. A claim is ripe when the issues are adequate for review and the challenged action would be final.[10] This is to prevent courts from making premature adjudications and also to help them avoid hearing abstract disagreements over administrative policies. *Merriam v. Philadelphia Historical Commission*, 777 A.2d 1212 (Pa.Cmwlth.2001). The present controversy involved an issue that would have been ripe at the construction permit phase. As the plans and type of fluoridation process to be used at the facility were approved by the construction permit and there were no other approvals necessary for the type of fluoridation process to be used at the facility, the DEP's action in granting the construction permit was a final action. All of the issues relating to the fluoridation of the water supply and the manner in which it was to be accomplished were discussed and finalized when the construction permit was granted. The DEP's approval of the construction permit was not only an approval of the fluoridation process that would be used by the Authority but also an approval of the hydrofluorosilicic acid type of fluoridation process, all of which were stated in the application for the construction permit. The operations permit would merely confirm that the construction was completed in accordance with the construction permit and the operating conditions were complied with. It did not address the construction or fluoridation issue any further. The only approvals necessary after the construction permit was granted were pro-

cedural in nature, such as obtaining approval to obtain a certificate that the construction was in accordance with the plans and specifications and an approval of the conditions of having properly certified personnel to operate the facility, etc. Thus, the DEP's determination was final and adequate for review, including the fluoridation process, at the time the construction permit was issued.

After the appeal period for the construction permit expires, the contractor cannot be expected to continue to deal with objections to the pre-construction phase as the uncertainty created thereby would place an unreasonable burden on economic development. If objections were allowed to be raised at any time after the construction was complete, the construction permit would be meaningless. Persons requesting a construction permit would be reluctant to spend considerable effort, time and money to construct a facility when it could be found after construction was complete that the construction permit appeal period was not final as to all pre-construction issues which could have been raised previously. When the construction permit was issued, it created a right to appeal which was the exclusive remedy for opposing the construction and operation and must be strictly pursued at that time. *Wheeling–Pittsburgh.*

Potratz became an "aggrieved" party and the matter was ripe for adjudication when the Authority was issued the construction permit. The issuance of the operating permit cannot be used as a method of collaterally attacking any issue which was or could have been raised when the construction permit was issued. Accord-

---

10. Potratz is questioning whether his constitutional rights were violated, not whether a statute is unconstitutional.

ingly, we must affirm the decision of the Board.

## ORDER

AND NOW, this 19th day of April, 2006 the order of the Environmental Hearing Board in the above captioned matter is affirmed.