IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Borough of Parkesburg,                    :
                    Appellant            :
                                         :
    v.                                   :   No. 1393 C.D. 2017
                                         :   ARGUED:  November 15, 2018
Joseph M. Rzonca                         :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                              FILED:  December 17, 2018

The Borough of Parkesburg (Borough) appeals from the August 28, 2017 Order of the Court of Common Pleas of Chester County (Trial Court) dismissing the Borough's Complaint against Joseph M. Rzonca.  For the reasons that follow, we vacate the Trial Court's Order and remand this matter for trial.

## Background

On January 13, 2016, a Borough Code Enforcement Officer sent Mr. Rzonca a notice (Enforcement Notice) informing him that his property located at 8 Chestnut Street in the Borough (Property) was in violation of two provisions of the International Property Maintenance Code of 2009 (Property Maintenance Code),[1]

---

[1] Section 107.1 of the Property Maintenance Code provides in relevant part:

Whenever the code official determines that there has been a violation of this [C]ode or has grounds to believe that a violation has occurred, notice shall be given in the manner prescribed in Sections 107.2 and 107.3 [of the Property Maintenance Code] to the person responsible for the violation as specified in this [C]ode. . . .

Property Maintenance Code § 107.1

which the Borough adopted and incorporated in Ordinance Number 486 (Ordinance 486).[2] The Enforcement Notice stated:

> This letter is to advise you that your [P]roperty located at 8 Chestnut St[reet] . . . in [the] Borough, is in violation of the [Property Maintenance Code], enforced through [Ordinance] 486.
>
> 304.2 Protective Treatment - All exterior surfaces, including but not limited to, doors, door and window frames, cornices, porches, trim, balconies, decks and fences, shall be maintained in good condition. Exterior wood surfaces, other than decay resistant woods, shall be protected from the elements and decay by painting or other protective covering or treatment. Peeling, flaking and chipped paint shall be eliminated and surfaces repainted. All siding and masonry joints, as well as those between the building envelope and the perimeter of windows, door and skylights, shall be maintained weather resistant and water tight. All metal surfaces subject to rust or corrosion shall be coated to inhibit such rust and corrosion, all surfaces with rust or corrosion shall be stabilized and coated to inhibit future rust and corrosion. Oxidation stains shall be removed from exterior surfaces.
>
> 304.6 Exterior Walls - All exterior walls shall be free from holes, breaks, and loose or rotting material; and maintained weatherproof [sic] and properly surface coated where required to prevent deterioration.
>
> You have 20 days from this notice ([until] February 2, 2016) to apply for a building permit to properly weatherproof your structure. Failure to correct this violation in the allotted time will cause the

---

[2] The Borough adopted Ordinance 486 in April 2010. Section 1 of Ordinance 486 states that the Borough adopted the International Property Maintenance Code of 2009 "as the Property Maintenance Code of the Borough of Parkesburg . . . for regulating and governing the conditions and maintenance of all property, buildings and structures . . . ." Ordinance 486, § 1. Ordinance 486 further provides that "each and all of the regulations, provisions, penalties, conditions and terms of said Property Maintenance Code on file in the office of the Borough . . . are hereby referred to, adopted, and made a part hereof, as if fully set out in this [O]rdinance, with the additions, insertions, deletions and changes, if any, prescribed in Section 2 of this [O]rdinance." *Id.*

Borough to file a civil complaint in [Magisterial] District [C]ourt [(District Court)].

You have the right to appeal this notice. If an appeal is desired[,] the Notice of Appeal must be completed and filed with the Borough within twenty (20) days after the decision, notice or order is served. The fee to file an appeal is $500 and must be paid at the time of filing. You can obtain a Property Maintenance Code Notice of Appeal form at The Borough Office or on our website at www.parkesburg.org.

Enforcement Notice, 1/13/16, at 1. Mr. Rzonca neither corrected the violations nor filed an appeal.

Thereafter, the Borough filed an action in District Court, seeking a civil penalty against Mr. Rzonca for his unabated code violations.[3] On March 31, 2016,

---

[3] Section 106.4 of the Property Maintenance Code, as revised by Ordinance 486, states in relevant part:

B. In addition to the enforcement of this [C]ode . . . as a Summary Offense as identified previously, if an action is brought At Law or In Equity as identified in Section 106.5 of this [C]ode, then any person who has violated or permitted the violations of the provisions of this [C]ode, upon being found liable therefor in a Civil Action commenced by [the] Borough, shall pay a Judgment of not less than One Thousand Dollars ($1,000.00) per violation, plus costs and attorney's fees incurred by [the] Borough.

C. Each day any violation exists and continues shall constitute a separate offense.

D. If any . . . Civil Action brought pursuant to this [C]ode results in a final determination without any appeal pending and if the violation still exists, then the Borough . . . shall be and is hereby empowered to correct the violation by repair or otherwise.

E. All costs, expenses and attorney's fees incurred or expended by the Borough . . . for any repair, etc., relative to a violation as is permitted in subsection D above, together with an administrative charge of ten percent (10%) may be charged as a Municipal Claim or Lien against the property at issue.

the District Court entered judgment in the Borough's favor in the amount of $1,284.18.

On April 12, 2016, Mr. Rzonca appealed to the Trial Court and demanded a jury trial. On April 29, 2016, the Borough filed a Complaint in the Trial Court, after which Mr. Rzonca filed an Answer and New Matter. In his Answer, Mr. Rzonca alleged, *inter alia*, that he no longer owned the Property due to foreclosure,[4] a different Borough ordinance governed the enforcement matter, and the Borough was harassing him and retaliating against him in violation of his civil rights. Rzonca's Ans. & New Matter, ¶¶ 2-3, 5.

The matter proceeded to arbitration in the Trial Court. On December 21, 2016, following a hearing, the Board of Arbitrators entered an award in the Borough's favor in the amount of $2,284.18.

Mr. Rzonca again appealed, and the Trial Court scheduled a *de novo* jury trial for August 28, 2017.[5] On August 23, 2017, the Borough filed a Motion in Limine, asserting that because Mr. Rzonca failed to appeal the initial Enforcement Notice, he was precluded from challenging validity of the Enforcement Notice in the Trial Court. On August 28, 2017, the day of trial, Mr. Rzonca filed an Answer to the Borough's Motion in Limine, asserting that the Enforcement Notice failed to provide adequate notice of the violations under the Property Maintenance Code.

---

Property Maintenance Code § 106.4(B)-(E). Section 106.5 of the Property Maintenance Code provides: "The imposition of penalties herein prescribed shall not preclude the legal officer of the jurisdiction from instituting appropriate action to restrain, correct or abate a violation . . . ." *Id.* § 106.5.

[4] The record shows that in November 2016, title to the Property was transferred to Wells Fargo Bank, N.A.

[5] Mr. Rzonca was unrepresented by counsel in these proceedings until June 2017.

The parties appeared for trial on August 28, 2017. At the outset of the proceeding, Mr. Rzonca's counsel stated that his client wished to withdraw his request for a jury trial and proceed without a jury. Notes of Testimony (N.T.), 8/28/17, at 3.[6] After releasing the jurors from the courtroom, the Trial Court asked both parties to present opening statements. *Id.* at 3-4, 6. During his statement, Mr. Rzonca's counsel asserted, *inter alia*, that the Borough's Enforcement Notice did not comply with the Property Maintenance Code's notice requirements. *Id.* at 7-8.[7] Specifically, Mr. Rzonca's counsel argued: "The minimum notification requirements are that the notice be in writing, include [a] description of real estate identification, [a] statement of violation or violations and why the notice is being issued. . . . [T]his [Enforcement Notice] simply cites two sections of the [Property Maintenance C]ode. It does not contain any explanation as to in what way the property is in violation of those two sections." *Id.* at 8.

In response, the Borough's counsel maintained that its Enforcement Notice sufficiently notified Mr. Rzonca of his violations and the steps required to abate those violations. The Borough's counsel then engaged in an extensive discussion with the Trial Court regarding the Property Maintenance Code's notice requirements and the content of the Enforcement Notice, during which the Trial Court reviewed the parties' pleadings and exhibits. *Id.* at 16-24. At the conclusion of this discussion, the following exchange occurred:

---

[6] Mr. Rzonca's counsel stated: "In light of the many . . . legal questions that this case presents[,] my client is willing, at this point, to submit the case to the [Trial] Court for a bench trial and withdraws his request for a jury trial." N.T., 8/28/17, at 3.

[7] Mr. Rzonca's counsel also argued that the Borough failed to properly serve the Enforcement Notice on Mr. Rzonca. N.T., 8/28/17, at 7-8. However, the Trial Court did not find improper service, and that issue is not before this Court.

THE [TRIAL] COURT [to the Borough's counsel]: That is your view. What's [the] motion from the defense?

[MR. RZONCA'S COUNSEL]: Motion to dismiss.

THE [TRIAL] COURT: Granted.

*Id.* at 24.

The Borough's counsel again stated his position:

During the course of this it was the [B]orough's belief that the [Enforcement N]otice was adequate for the purpose of putting Mr. Rzonca on notice and the due process requirements were met and had we been permitted to move forward with trial[,] we would establish that there was an abatement problem, that there was communication between Mr. Rzonca and the code enforcement officer asserting that he didn't want to put up siding that he felt he didn't have to, that he didn't need a permit issued. That would have been addressed in an appeal in front of the Appeal Board.

Since this is a civil action and we moved forward with full pleadings, complaints alleging what the violations were and which, essentially, admissions in it that says yes but or yes but. Mr. Rzonca was candid, he did not own the [P]roperty, misstatement of fact and law at the time this process was proceeded with. We are now at this point. We were ready for a jury trial and ready to present before Your Honor. But it's a civil action which I don't believe there has been any violation of due process under the circumstances because communications and understanding of photographs established that Mr. Rzonca [k]new fully well that the problem was lack of siding on the wall.

*Id.* at 25-26.

The Trial Court rejected this argument, stating that counsel was "putting the cart before the horse." *Id.* at 26. The Trial Court then clarified its ruling:

6

I'm not doubting one minute that there were violations that existed and I'm not doubting for one minute that during the course of all of these proceedings back and forth that [Mr. Rzonca] knew what those violations were. All I'm saying is that there is a process here and the codes that you wish to enforce require certain conditions in the proceedings and one of those conditions . . . is that the notice has to require certain things in writing and what I'm suggesting is it fails to do that. And you very easily could have done that.

*Id.*

The Trial Court determined that the Borough failed to provide adequate notice of the violations to Mr. Rzonca pursuant to Section 107.2 of the Property Maintenance Code.[8] The Trial Court explained:

The [Enforcement N]otice received by [Mr. Rzonca], dated January 13, 2016, is attached hereto, and clearly failed to put [him] on notice of the specific violations and why the [Enforcement N]otice was being issued. The [Enforcement N]otice also failed to include a correction order identifying the repairs or improvements required to bring the structure into compliance. By way of example, the [Enforcement N]otice could have simply added "the structure is missing or lacks siding and a correction order that [Mr. Rzonca] has "x number of days to add or replace the siding." Instead, the [Enforcement N]otice merely regurgitated the language of two parts of the [Property Maintenance

---

[8] Section 107.2 of the Property Maintenance Code provides that a notice of violation shall:

1. Be in writing.
2. Include a description of the real estate sufficient for identification.
3. Include a statement of the violation or violations and why the notice is being issued.
4. Include a correction order allowing a reasonable time to make the repairs and improvements required to bring the dwelling unit or structure into compliance with the provisions of this [C]ode.
5. Inform the property owner of the right to appeal.
6. Include a statement of the right to file a lien in accordance with Section 106.3.

Property Maintenance Code § 107.2.

7

C]ode without specifically identifying what was in violation and what specifically needed to be repaired or improved.

Trial Ct. Order, 8/28/17, at 1 n.1.

In its subsequent Pa. R.A.P. 1925(a) Opinion, the Trial Court further stated that "[t]he specific violations alleged, and the specific repairs necessary, are missing from [the Enforcement N]otice." Trial Ct. Op., 12/8/17, at 4. The Trial Court also rejected the Borough's claim that the doctrine of administrative finality foreclosed Mr. Rzonca's challenge to the validity of the Enforcement Notice, finding:

> [The Borough] did not establish that the doctrine [of administrative finality] was applicable to this [Property Maintenance C]ode violation matter, and conspicuously absent from the [Enforcement N]otice sent to [Mr. Rzonca] on January 13, 2016, was any statement advising [him] that the failure to pay $500 and to appeal the matter within 20 days would result [in Mr. Rzonca] being barred from any future challenge to any further action by the [Borough] with regard to the violations referred to in the [Enforcement N]otice.

*Id.* at 5 (emphasis in original). Therefore, because the Enforcement Notice "failed to meet the mandatory criteria for a valid violation notice under [the Property Maintenance] Code," the Trial Court dismissed the Borough's Complaint. *Id.*

The Borough timely filed a Post-Trial Motion, which the Trial Court denied on September 7, 2017. The Borough now appeals to this Court.[9]

### Issues

(1) Is Mr. Rzonca precluded from challenging the validity of the Enforcement Notice under the doctrine of administrative finality because he failed to appeal the initial Enforcement Notice within 20 days?

---

[9] Our standard of review of an order denying a motion for post-trial relief is limited to determining whether the Trial Court abused its discretion or committed an error of law. *Koter v. Cosgrove*, 844 A.2d 29, 32 n.4 (Pa. Cmwlth. 2004).

(2) Was the language in the Enforcement Notice sufficient to put Mr. Rzonca on notice of the violations, particularly where Mr. Rzonca acknowledged his understanding of the violations?

**Discussion**

### 1. Administrative Finality

The Borough first argues that the doctrine of administrative finality foreclosed Mr. Rzonca's challenge to the validity of the Enforcement Notice. The Borough contends that Mr. Rzonca's failure to appeal the initial Enforcement Notice within 20 days precluded him from collaterally attacking it at the time of trial. We disagree.

The doctrine of administrative finality "precludes a collateral attack of an administrative action where the party aggrieved by the action foregoes his statutory appeal remedy." *Potratz v. Dep't of Envtl. Prot.*, 897 A.2d 16, 19 (Pa. Cmwlth. 2006); *see Dep't of Envtl. Res. v. Wheeling-Pittsburgh Steel Corp.*, 348 A.2d 765, 767 (Pa. Cmwlth. 1975) ("It is settled both under common law and statute that where an act creates a right or liability or imposes a duty and prescribes a particular remedy for its enforcement such remedy is exclusive and must be strictly pursued.").

We conclude that the doctrine of administrative finality does not apply in this case because the Enforcement Notice was not an administrative adjudication. *See* Section 101 of the Administrative Agency Law, 2 Pa. C.S. § 101 (defining "adjudication" as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made"). The Borough has cited no case law, nor have we found any, specifically applying the doctrine of administrative finality to a code enforcement notice issued by a municipality pursuant to a local ordinance. *See* Trial Ct. Op.,

9

12/8/17, at 5 (finding that the Borough "did not establish that the doctrine was applicable to this code violation matter").

The Borough attempts to analogize this case to zoning enforcement matters filed pursuant to the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202. In such cases, our Court has held that a property owner's failure to timely appeal an enforcement notice to the zoning hearing board (ZHB) waives all defenses in a subsequent civil enforcement action. *See Lower Mount Bethel Twp. v. N. River Co., LLC*, 41 A.3d 156, 161 (Pa. Cmwlth. 2012) (holding that "failure to appeal the Township's Enforcement Notice to the [ZHB] renders the Enforcement Notice unassailable"); *Moon Twp. v. Cammel*, 687 A.2d 1181, 1184 (Pa. Cmwlth. 1997) ("The property owner may appeal the notice of violation to the [ZHB]. Failure to do so makes it conclusively to be a violation."). However, in each of these cases, our Court relied on Section 616.1(c)(6) of the MPC, which provides: "An enforcement notice shall state . . . [t]hat failure to comply with the notice within the time specified, *unless extended by appeal to the [ZHB]*, constitutes a violation, with possible sanctions clearly described." Section 616.1(c)(6) of the MPC, 53 P.S. § 10616.1(c)(6) (emphasis added).[10]

Here, Section 107.2 of the Property Maintenance Code does not contain such an appeal requirement, and the Enforcement Notice did not inform Mr. Rzonca that his failure to appeal within 20 days would result in the waiver of all defenses in a subsequent civil action. *See* Trial Ct. Op., 12/8/17, at 5. Thus, we conclude that the doctrine of administrative finality does not apply to the Borough's Enforcement Notice.

---

[10] Section 616.1 of the MPC was added by the Act of December 21, 1988, P.L. 1329, No. 170.

## 2. Actual Notice

Next, the Borough asserts that the Trial Court erred in concluding that the Enforcement Notice failed to comply with Section 107.2 of the Property Maintenance Code. Section 107.2 of the Property Maintenance Code provides that a notice of violation shall:

1. Be in writing.
2. Include a description of the real estate sufficient for identification.
3. Include a statement of the violation or violations and why the notice is being issued.
4. Include a correction order allowing a reasonable time to make the repairs and improvements required to bring the dwelling unit or structure into compliance with the provisions of this code.
5. Inform the property owner of the right to appeal.
6. Include a statement of the right to file a lien in accordance with Section 106.3.

Property Maintenance Code § 107.2.

The Trial Court found that the Enforcement Notice failed to satisfy two of these requirements, because it included neither a statement of Mr. Rzonca's violations nor a correction order allowing a reasonable time for Mr. Rzonca to bring the Property into compliance.[11] The Trial Court stated that although the Enforcement Notice quoted two sections of the Property Maintenance Code, it did not explain in any detail how the Property violated those two sections, nor did it advise Mr. Rzonca

---

[11] In its appellate brief, the Borough concedes that the Enforcement Notice did not contain the requisite statement regarding the Borough's right to file a lien on the Property. Borough's Br. at 26 (citing Property Maintenance Code § 107.2). However, that omission was not the basis for the Trial Court's finding that Mr. Rzonca's due process rights were violated. Further, the Borough notes that its Enforcement Notice did not reference the right to file a lien "because in filing a civil action[,] the Borough would only be able to obtain a lien if it obtained a civil judgment and perfected same." *Id.*

11

what he needed to do to bring the Property into compliance. Thus, the Trial Court concluded that the Enforcement Notice was defective on its face.

While it appears that the Enforcement Notice may have been facially deficient under Section 107.2 of the Property Maintenance Code, we agree with the Borough that the record shows that Mr. Rzonca had actual notice of the violations at issue and, therefore, his due process rights were not violated.

It is evident from Mr. Rzonca's own pleadings, as well as the exhibits appended thereto, that he knew the precise nature of the violations and how to correct them. For example, Mr. Rzonca acknowledged that the Property had exposed wood surfaces that required painting and that his incomplete exterior siding project needed to be completed. In his Answer, Mr. Rzonca averred that "the Borough . . . informed [Mr. Rzonca] that he needs to file for a permit to repair property which includes painting and applying siding over top of existing wood siding (original siding was not removed nor did it need repairs)." Rzonca's Ans. & New Matter, ¶ 5. Mr. Rzonca also averred that he "cannot fix alleged violations until [the] Code Enforcement Officer understands the [Uniform Commercial Code,] which states that no permit is needed for installing siding over [an] existing structure which is not in need of any repairs and even so a permit is not needed for basic repairs. No structural changes are needed and it falls under exclusions to install siding or paint structure . . . ." *Id.*, ¶ 10; *see also id.*, Exs. B, D. In fact, the Trial Court acknowledged that Mr. Rzonca had actual notice of the violations, stating, "I'm not doubting one minute that there were violations that existed *and I'm not doubting for one minute that during the course of all of these proceedings back and forth that [Mr. Rzonca] knew what those violations were.*" N.T., 8/28/17, at 26 (emphasis added).

12

We find this Court's decision in *Commonwealth v. Nicely*, 988 A.2d 799 (Pa. Cmwlth. 2010), instructive here. In *Nicely*, a borough code enforcement officer sent the property owner a notice stating that: (1) an unregistered vehicle in his driveway violated the borough's property maintenance code and its related ordinance; (2) he had 30 days to remove the vehicle; and (3) his failure to remove the vehicle could result in a citation. *Id.* at 801. The property owner neither responded to the notice nor removed the vehicle. *Id.* at 802. Consequently, the borough issued a citation to the property owner, and he was later convicted of a summary offense and ordered to pay a fine and costs. *Id.*

On appeal, the property owner argued, *inter alia*, that the citation lacked the specificity necessary to provide him with knowledge of the nature of the accusations against him. *Id.* at 806. Our Court, however, rejected this claim. We first explained that "the essential elements of a summary offense must be set forth in the citation so that the defendant has fair notice of the nature of the unlawful act for which he is charged." *Id.* (quoting *Com. v. Borriello*, 696 A.2d 1215, 1217 (Pa. Cmwlth. 1997), *aff'd*, 723 A.2d 1021 (Pa. 1999)).[12] After reviewing the record and relevant law, we affirmed the property owner's summary conviction, concluding:

> Here, the citation specifically states the section of the Ordinance and the section of the Property Maintenance Code that [the property

---

[12] Our Court also relied on Pennsylvania Rule of Criminal Procedure 109, which states:

> A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, citation, summons, or warrant, or a defect in the procedures of these rules, unless the defendant raises the defect before the conclusion of the trial in a summary case . . . and the defect is prejudicial to the rights of the defendant.

Pa. R. Crim. P. 109.

owner] was charged with violating for keeping an unlicensed and unregistered vehicle on his property. *The citation provided [him] with sufficient information regarding the charges against him such that he could properly defend himself and enable the trial court to determine the sufficiency of the Borough's evidence* to support its conviction. Moreover, *[the property owner's] rights were not prejudiced because the citation, taken as a whole, prevented surprise as to the nature of the summary offenses [he] was charged with* and of which he was found guilty. Thus, we conclude that there was no violation of [the property owner's] due process rights . . . .

*Id.* at 807 (emphasis added).

In its brief, the Borough relies on a more recent, unreported decision of this Court, *Commonwealth v. Comensky* (Pa. Cmwlth., No. 1421 C.D. 2013, filed July 30, 2014),[13] which involved the same type of due process claim as in *Nicely*. In *Comensky*, the municipality filed a criminal complaint against a property owner for violating certain provisions of its property maintenance code. The property owner challenged the validity of both the violation notice and the criminal complaint, arguing that the defects in notice deprived him of due process. On appeal, this Court determined that the property owner had actual knowledge of the specific offenses charged and the record showed that he understood them. Therefore, even though the violations were poorly identified in the written notice, the property owner could not claim a due process violation because he had both actual knowledge and an opportunity to cure the problems.

We recognize that, unlike this case, both *Nicely* and *Comensky* involved a criminal prosecution for violation of a municipality's property maintenance code, rather than a civil enforcement action. However, a criminal prosecution is subject

---

[13] *See* Commonwealth Court Internal Operating Procedure § 414(a), 210 Pa. Code § 69.414(a) (stating that an unreported panel decision of this Court, issued after January 15, 2008, may be cited for its persuasive value).

14

to stricter constitutional scrutiny and a higher burden of proof than a civil enforcement matter. As such, we believe that our Court's conclusion in these cases – that a defect in the notice of a property maintenance code violation may be cured by actual knowledge of the violation – likewise applies in a civil enforcement action, where the penalty is monetary and there is no risk of a criminal conviction or a deprivation of property.[14]

Here, Mr. Rzonca made several admissions in his pleadings that demonstrated his apparent understanding of the violations, and the Trial Court found that Mr. Rzonca was aware of the nature of the violations. *See* N.T., 8/28/17, at 26. Mr. Rzonca also failed to demonstrate that he was prejudiced in any way by the deficient notice, particularly in light of the fact that he waited until the day of trial to first claim improper notice. At that point, Mr. Rzonca had already appeared before both the District Court and the Trial Court's Board of Arbitrators regarding his violations, never once claiming improper notice. *See Weaver v. Franklin Cty.*, 918 A.2d 194, 203 (Pa. Cmwlth. 2007) ("Fundamentally, due process affords an individual notice and opportunity to be heard.").

Because the Trial Court found that Mr. Rzonca was aware of the nature of the Property Maintenance Code violations, and the record shows that he understood them, we conclude that Mr. Rzonca was precluded from claiming a due process violation based on improper notice. Therefore, the Trial Court erred in dismissing the case on that basis.

---

[14] This is not a situation where strict compliance with notice provisions is required to comport with due process, such as when an individual may lose his or her property at a tax sale. *Cf. Citimortgage, Inc. v. KDR Invs., LLP*, 954 A.2d 755, 758 (Pa. Cmwlth. 2008) (stating that the "[n]otice provisions of the [Real Estate Tax Sale] Law are to be strictly construed, and there must be strict compliance with such provisions to guard against deprivation of property without due process of law").

15

## Conclusion

Accordingly, because we conclude that the Trial Court erred in dismissing the Borough's Complaint, we vacate the Trial Court's Order and remand this matter for trial.[15]

_____
ELLEN CEISLER, Judge

---

[15] In its brief, the Borough points out that the Trial Court never ruled on its Motion in Limine before dismissing the case. Because we are vacating the Trial Court's Order, which returns the case to its pre-dismissal status, the Trial Court will have the opportunity on remand to rule on the Borough's pending Motion in Limine.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Borough of Parkesburg,       :
            Appellant       :
                                :
       v.                   :   No. 1393 C.D. 2017
                                  :
Joseph M. Rzonca           :

## O R D E R

AND NOW, this 17th day of December, 2018, the Order of the Court of Common Pleas of Chester County, dated August 28, 2017, is hereby VACATED, and this matter is REMANDED for further proceedings consistent with the foregoing Opinion.

Jurisdiction relinquished.


_____
ELLEN CEISLER, Judge